(633 P.2d 1174)

No. 52,353

GEORGE R. WINCHELL, INC., *Plaintiff-Appellant,* v. JAMES M. NORRIS, *Defendant-Appellee,* and MERIDIAN MUTUAL INSURANCE CO., *Garnishee-Appellee.*

Petition for review denied December 9, 1981.

Opinion filed September 25, 1981.

*Christopher Randall,* of Turner & Boisseau, Chartered, of Wichita, for the appellant.

*Jerry M. Ward,* of Ward & Berscheidt, of Great Bend, for the appellee.

Before FOTH, C.J., ABBOTT and SWINEHART, JJ.

SWINEHART, J.: This is an appeal arising out of a garnishment proceeding by plaintiff George R. Winchell, Inc., on a judgment entered in his favor against defendant James Norris in the District Court of Pawnee County. In the garnishment proceeding, the trial court held that plaintiff was not entitled to recover more than the policy limits of defendant's insurance policy.

On March 10, 1974, eighteen-year-old James Norris, while operating a motor vehicle, failed to obey a stop sign located at an intersection near Larned, Kansas. In order to avoid a collision, Paul Terry, the driver of an oncoming tractor-trailer, swerved into a ditch. The tractor-trailer overturned and sustained severe damage. The accident also killed or injured twenty-nine cattle con-

tained in the trailer. George R. Winchell, Inc., owned the tractor-trailer and the load of cattle.

Following the accident, the parents of James Norris received a telephone call from their insurance agent advising them of the accident. The Norrises, who maintain a home in Eaton Rapids, Michigan, were told by the agent that since their son lived out-of-state, the insurance policy on the vehicle did not provide coverage for the accident.

Suit was filed in April of 1975 by George R. Winchell, Inc., against James Norris for damages sustained in the accident in the amount of $19,710.95. The insurance carrier provided no defense for James Norris. Personal counsel filed an answer for defendant Norris. Later in the year the personal counsel served upon Norris a notice of intent to withdraw, advising Norris to obtain other counsel or judgment might be entered against him. In February, 1978, Norris's personal attorney filed a motion to withdraw as counsel; the motion was served on James Norris as well as his father, Max Norris, in Michigan.

By May 1, 1978, the lawsuit had been on file for over three years. On that date the trial court entered a default judgment in the amount of $19,710.95 against James Norris for his failure to comply with previous orders of the court compelling discovery in the case. No counsel appeared for Norris.

Subsequently, an order of garnishment was issued on Norris's insurance carrier, Meridian Mutual Insurance Company. The insurer filed a motion to dismiss the order, contending that James Norris was not its insured. Following discovery in the garnishment proceeding, the case was submitted to the trial court to determine whether James Norris was an insured of the garnishee. The insurance carrier maintained that James Norris was not a resident of the household of the named insured, Max Norris, at the time of the accident and, therefore, no coverage was extended to the accident.

The trial court found that James Norris was a resident of the household at the time of the accident and, consequently, the insurance policy did extend coverage to the accident. The court entered judgment against the insurer for its policy limits of $10,000. The court further held that there was a substantial question regarding the coverage question, that the insurer acted in good faith in refusing to provide a defense to its insured, and

that the insurer was not liable for any amount in excess of its policy limits.

Plaintiff appeals from the determination of no liability for amounts in excess of the policy limits, but does not challenge the trial court's finding of "good faith" on the part of the garnishee.

Plaintiff contends that when an insurer wrongfully refuses to provide a defense for its insured, the insurer is liable for any judgment rendered against its insured as a result of its refusal, including damages in excess of its policy limits, regardless of whether the refusal was made in good faith or whether a settlement offer was made and refused.

It is a well-established rule of law in Kansas that "[i]n defending and settling claims against its insured, the insurer of a liability or indemnity policy owes to the insured the duty to act in good faith and without negligence; failure to do so will result in the insurer being held liable for the full amount of the insured's resulting loss, even if that amount exceeds policy limits. (Following, *Bollinger v. Nuss,* 202 Kan. 326, 449 P.2d 502 [1969].)" *Rector v. Husted,* 214 Kan. 230, Syl. ¶ 1, 519 P.2d 634 (1974). This rule is applicable only when the insurer has already decided to defend its insured and does not resolve the issue presented in the case here on appeal. A review of the cases reveals that Kansas has not yet dealt with the question of an insurer's liability for an initial wrongful refusal to defend.

The majority rule in other jurisdictions concerning the liability of an insurer as a result of unjustified refusal to defend is well stated at 7 Am. Jur. 2d, Automobile Insurance § 396, pp. 1155-1156:

"By its unjustified refusal to defend an action against the insured, an automobile liability insurer becomes subject to the following new and positive obligations: (1) liability for the amount of the judgment rendered against the insured or of the settlement made by him; (2) liability for the expenses incurred by the insured in defending the suit; (3) liability for any additional damage traceable to its refusal to defend.

"The first and most obvious of these positive obligations created by an insurer's unjustified refusal to defend is its obligation to pay the amount of the judgment rendered against the insured or of any settlement made by the insured of the action brought against him by the injured party. However, this obligation of the insurer to pay the amount of judgment or settlement is not unlimited. It does not render the insurer liable for more than the amount of the policy limit, nor does it obligate the insurer to pay the amount of an unreasonable settlement or a settlement made in bad faith."

One of the leading cases in this area is *Mannheimer Bros. v. The Kansas C. & S. Co.,* 149 Minn. 482, 184 N.W. 189 (1921). The facts in *Mannheimer* are similar to those presented in the case here on appeal. An auto insurer wrongfully refused to defend an action for its insured and no settlement was offered or refused. The Minnesota Supreme Court reasoned as follows:

"The question presented is controlled by the general rule that the measure of damages for the breach of a contract for the payment of money is the amount agreed to be paid with interest. The fact in this case that defendant's obligations under the contract extended beyond the payment of the amounts stated and included the promise to conduct the defense of the action, cannot be held to enlarge the limitation as to the amount fixed as reimbursement for injuries to persons. The failure to defend exposed defendant only to the additional liability for the cost and expense which plaintiff was put to by reason of defendant's breach of contract in that respect. That breach clearly did not create any greater liability on the facts here disclosed." 149 Minn. at 486-487.

The court in *Mannheimer* implied that had the facts been different, the insurer would possibly have been exposed to greater liability. One such factual difference that has been explored in numerous other cases is an offer of settlement within the policy limits being made, combined with a refusal to defend the action. The leading case dealing with this point is *Comunale v. Traders & General Ins. Co.,* 50 Cal. 2d 654, 328 P.2d 198 (1958). In *Comunale,* the insurer wrongfully refused to defend and a settlement offer was made to the insured that was within the policy limits. The offer was refused by the insurer. The California Supreme Court held:

"[A]n insurer, who wrongfully declines to defend and who refuses to accept a reasonable settlement within the policy limits in violation of its duty to consider in good faith the interest of the insured in the settlement, is liable for the entire judgment against the insured even if it exceeds the policy limits." 50 Cal. 2d at 661.

The theory behind this position is that by refusing a settlement offer, the insurer is causing a discernible injury to the insured. A refusal to defend, in itself, can be compensated for by paying the costs incurred in the insured's defense. But when a settlement offer is also rejected, the injury to the insured is traceable to the insurer's breach. The court in *Comunale* stated its rationale in the following manner:

"An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is

liable for the full amount which will compensate the insured for all the detriment *caused by the insurer's breach* of the express and implied obligations of the contract. Certainly an insurer who not only rejected a reasonable offer of settlement but also wrongfully refused to defend should be in no better position than if it had assumed the defense and then declined to settle." 50 Cal. 2d at 660. (Emphasis supplied.)

Absent a settlement offer, the plain refusal to defend has no causal connection with the amount of the judgment in excess of the policy limits. If the insured has employed competent counsel to represent him, there is no basis for concluding that the judgment would have been for a lesser sum had the defense been conducted by insurer's counsel. If there was a settlement offer within the policy limits, however, then a causal connection would exist.

One Florida case has held that showing the existence of a settlement offer is not the only manner in which to prove a causal relationship between an insurer's refusal to defend and a judgment in excess of the policy limits. In *Thomas v. Western World Ins. Co.,* 343 So. 2d 1298, 1302 (Fla. Dist. Ct. App. 1977), the court stated that a settlement offer was just one factor to consider and not a prerequisite. The Florida court of appeals held:

"[E]ven in the absence of a settlement offer, the insurer may be liable for an excess judgment where (1) due to the actions of the insurer, the insured suffers a default or final judgment without benefit of an attorney, and (2) the insured can prove the final judgment would have been lower had the suit been properly defended. Such a case would fall within the general rule  .  .  .   that policy limits do not restrict the damages recoverable by the insured for breach of contract."

In *Thomas* it was clear that an attorney could have prevented or substantially reduced the judgment since an obvious affirmative defense existed. The insured did not have counsel and a default judgment was entered. The court stressed that the party suffering a breach is obligated to take all reasonable means to protect himself and mitigate damages. Under the facts of *Thomas,* the court found that reasonable diligence would have made it incumbent upon the insured to employ independent counsel, either immediately to jump into the fray to preserve remaining rights, or to attempt timely to have the default and final judgment set aside. It was emphasized that the insured has the burden of establishing his damages. *Thomas,* 343 So. 2d at 1303.

The existence of good or bad faith is discussed a great deal in the cases reviewed and in the briefs filed by the parties in this

case. As a general rule, a finding of bad faith is required for a finding of liability of amounts in excess of the policy limits. *Seward v. State Farm Mutual Automobile Insurance Co.,* 392 F.2d 723, 726 (5th Cir. 1968). The most compelling question concerning the bad faith requirement is at what stage a finding of bad faith is required in order for it to have an effect on the insurer's liability. A review of the cases suggests that an exercise of bad faith by the insurer in the refusal of an offered settlement is required, which makes it comparable to the situation which exists absent a refusal of a defense. A showing that bad faith was exercised when the insurer made the initial decision of whether to defend or not is not required. See *Thomas v. Western World Ins. Co.,* 343 So. 2d at 1304; 7 Am. Jur. 2d, Automobile Insurance § 395, p. 1154. In the latter situation, a wrongful refusal is enough to constitute breach. If no settlement offer is made, the existence of good or bad faith is irrelevant.

Applying the majority rule, we find that defendant garnishee, Meridian Mutual Insurance Company, is not liable for the excess amount of judgment rendered in plaintiff's favor, and that under these facts, the trial court did not err in limiting recovery to plaintiff to the coverage provided by the insurance contract, $10,000, under garnishment proceedings.

Affirmed.