832 P.2d 212

Tom ROGAN, an individual; Mary Rogan, an individual; Kyle and Lanette Parker; Lisa and Edward Largo; Larry Foster, an individual; Ruth Fry, an individual, Plaintiffs–Appellees, Cross Appellants,

v.

AUTO–OWNERS INSURANCE COMPANY, a corporation doing business in Arizona; LeBaron & Carroll Inc., an Arizona corporation, Defendants–Appellants, Cross Appellees.

No. 1 CA–CV 88–618.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 13, 1991.

Reconsideration Denied Oct. 30, 1991.

Petition and Cross–Petition for Review Denied July 7, 1992.

ee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001–1461.

**560**

The Langerman Law Offices, P.A. by Amy G. Langerman, Richard W. Langerman, Phoenix, for plaintiffs-appellees, cross-appellants.

Vermeire & Turley, P.C. by Joseph B. Swan, Jr. and Paul G. Ulrich P.C. by Paul G. Ulrich, Nancy C. Thompson, Phoenix, for defendant-appellant, cross-appellee Auto–Owners Ins. Co.

Gust, Rosenfeld & Henderson by Fred Cole, Phoenix, and Ranger & Associates by Edward M. Ranger, Mark F. Brinton, Myles P. Hassett, Scottsdale, for defendant-appellant, cross-appellee LeBaron & Carroll, Inc.

OPINION

CLABORNE, Judge.

Auto–Owners Insurance Company (Auto–Owners) and LeBaron & Carroll, Inc. (LeBaron & Carroll) appeal from the trial court's judgment and jury verdicts in favor of the appellees. The appellees have filed a cross-appeal from the judgment against both Auto–Owners and LeBaron & Carroll. Although numerous issues are presented in this appeal, we exercise our discretion to address only the issue of Auto–Owners' liability for the excess judgment entered against its insured in this opinion. *See* Rule 28(g) (1990), Arizona Rules of Civil Appellate Procedure. The remaining issues are addressed in a memorandum decision.

FACTUAL BACKGROUND

The underlying dispute in this case involves insurance coverage for a 1971 Mack tractor.[1] The tractor was owned by Parker Concrete, a redi-mix concrete business in Payson, Arizona. On February 4, 1984, Ed Largo, an employee of Parker Concrete, collided with a motor home while driving the 1971 Mack tractor. The accident injured the passengers of the motor home, Tom and Mary Rogan, Ruth Fry and Larry Foster (motor home plaintiffs). Largo was cited for crossing the center of the road.

Kyle and Lanette Parker owned and operated Parker Concrete. Their insurance carrier was Auto–Owners Insurance Company, and their agent was LeBaron & Carroll. On August 12, 1983, the Parkers wanted to add the 1971 Mack tractor to their policy. LeBaron & Carroll, however, misdescribed the Mack tractor on the policy as a 1971 Mack trailer.

On October 24, 1983, Lanette drove to Mesa to pay an insurance premium. She met with Roberta Speltie, a LeBaron and Carroll employee, and while there, noticed the misdescription of the tractor. Lanette requested that it be changed, and that a 1969 Freightliner be added to the policy.

---

1. A "tractor" is the truck portion of a large truck and trailer. Two of the major manufacturers of these trucks are Peterbilt and Mack.

Roberta claims that Lanette told her to either change the trailer to a tractor or delete the tractor from the policy. In either case, Roberta said the request had to be in writing.

On November 2, 1983, LeBaron & Carroll received the following letter from Lanette:

ATTENTION: BOBBIE

Here is a letter of lien clearance on Mack tractor. You have it listed as a Mack trailer. Please cancel this Mack tractor. Please add: 1969 White Freightliner—Value: $10,000.00

Here are the serial numbers you asked for:

1973 International mixers:

79795C1B16305
7979SCG13452

1971 Ford mixer: Y80CVL72351

Value: Mixers: $8,000.00 Each

(Signed) Lanette A. Parker

Based on this letter, LeBaron & Carroll claims that it sent Auto–Owners a request to delete the 1971 Mack tractor. Auto–Owners contends that it never received the request and the Mack remained on the policy. On January 26, 1984, David Cummard, an agent at LeBaron & Carroll, and John Carroll visited Kyle while on business in the Payson area. Kyle testified that he gave Cummard a check for the premium due on the insurance policy and that he reviewed the declaration sheets. He testified that he told Cummard that the tractor was still listed as a trailer and that he wanted coverage on the tractor. Auto–Owners claims that Kyle told Cummard to delete the 1971 Mack from the policy.

The Parkers notified LeBaron & Carroll of the accident on February 6, 1984. LeBaron & Carroll informed the Parkers that there was "a problem with coverage." Kyle, his brother Wade, and Wade's father-in-law Lufken Hunt, drove to Mesa the next day to meet with representatives of LeBaron & Carroll. The parties discussed the "coverage problem" and Milo LeBaron showed Kyle Lanette's letter of October 24, 1983. This was the first time Kyle had seen the letter. Although he had reviewed a rough draft, he did not review the final draft sent to LeBaron & Carroll. Milo testified that Kyle's concern at the meeting was whether there was a chance the Mack was covered, since the premium had not yet been returned.

On February 8, 1984, Milo received a message from Diane Zorabrinski, an underwriter at Auto–Owners, that the Parker Concrete endorsement sheet was being processed and that at the present time there was no coverage for the 1971 Mack tractor. The endorsement sheet was being processed in response to a January 26, 1984, deletion request from Julie Crane. Crane, a customer service representative at LeBaron & Carroll, testified that she had discovered Lanette's written request to delete the Mack tractor, and noticed that it had not been acted upon. The automobile policy declaration sheet issued February 13, 1984, showed, for the first time, that the 1971 Mack trailer had been deleted. Previous declaration sheets issued on January 20, 1984, and February 1, 1984, showed coverage for a 1971 Mack trailer.

Auto–Owners sent Joseph Hinsberg to investigate the accident. With respect to coverage, Hinsberg concluded:

It is my opinion that there was a communications gap between the agent and the insured and the insured had no intention, ever, to cancel his Bodily Injury coverage on his 1971 Mack Tractor. Mr. Parker also stated that he had never received any cancellation notice from Auto–Owners stating that he was cancelled [sic] and he would never have driven that 1971 Mack Tractor had it been cancelled.

Auto–Owners sent a letter to the Parkers on April 14, 1984, denying coverage for the accident. Auto–Owners gave two reasons for its denial: (1) Largo was pulling a trailer with the Mack tractor that was neither owned by Parker Concrete nor insured by Auto–Owners and, pursuant to exclusion eleven of the insurance policy, this eliminated coverage; and (2) prior to the accident, LeBaron & Carroll, at the Parkers' written request, requested Auto–Owners to delete the 1971 Mack tractor from the policy.

## PROCEDURAL HISTORY

On February 3, 1986, Larry Foster and Ruth Fry, two of the motor home plaintiffs, filed suit against the Parkers in Gila County for damages suffered as a result of the accident. The parties executed a covenant not to execute in which the Parkers agreed to allow judgment to be taken against them and in favor of Fry, Foster and the Rogans. In return, the Parkers assigned any potential claim they had against Auto–Owners and LeBaron & Carroll to the motor home plaintiffs. *See Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969). The Parkers answered the complaint stating they had no objection to judgment being entered against them. A brief trial on damages was held, and, on September 9, 1986, the trial court entered judgment in favor of the motor home plaintiffs for $900,000.00. Auto–Owners was informed of the judgment in December 1986. Neither the plaintiffs nor the Parkers ever informed Auto–Owners of the Gila County lawsuit prior to the entry of judgment.

On April 15, 1987, the motor home plaintiffs and the Parkers filed suit against Auto–Owners and LeBaron & Carroll alleging bad faith, intentional misrepresentation, fraud, negligence, gross negligence and estoppel in the denial of insurance coverage to the Parkers. In their second amended complaint, the plaintiffs named the Largos as additional plaintiffs. The trial court granted the plaintiffs' motion for partial summary judgment against Auto–Owners on the issues of coverage and estoppel. A jury trial began on January 4, 1988.

During the course of the trial, the court ruled on several motions made by the parties. First, it allowed the introduction of the stipulated judgment and covenant not to execute in the Gila County lawsuit, but refused to allow any evidence concerning liability or damages and any collateral attack on the judgment. Second, it directed a verdict in favor of Auto–Owners on the issue of punitive damages. Third, it directed a verdict in favor of Auto–Owners on the issue of vicarious or joint liability for claims against LeBaron & Carroll. Fourth, it granted a directed verdict in favor of LeBaron & Carroll on the issues of estoppel, negligence, statute of limitations and vicarious liability for claims against Auto–Owners.

On January 29, 1988, the jury returned verdicts in favor of the plaintiffs and against defendants Auto–Owners and LeBaron & Carroll. The jury concluded that Auto–Owners acted in bad faith in denying coverage for the accident and awarded the Parkers $100,000.00, the Largos $10,000.00 and the motor home plaintiffs $10,000.00 as compensatory damages. Against LeBaron & Carroll, the jury awarded the Parkers $250,000.00 as compensatory damages and $500,000.00 as punitive damages, and awarded the remaining plaintiffs $5,000.00 as compensatory damages.

The parties submitted numerous post-trial motions. The trial court denied the plaintiffs' motion for an additur against Auto–Owners providing for a judgment of $900,000.00; awarded the plaintiffs $200,-000.00 in attorneys' fees; granted LeBaron & Carroll a judgment notwithstanding the verdict concerning the judgment in favor of all plaintiffs except the Parkers on the ground that LeBaron & Carroll owed no duty to the other plaintiffs; granted LeBaron & Carroll a new trial on the issue of punitive damages, conditional on a remittitur, which the plaintiffs accepted, decreasing the punitive damages to $200,-000.00; granted LeBaron & Carroll a new trial on the issue of compensatory damages in favor of the Parkers, conditional on a remittitur, which the Parkers accepted, decreasing the damages to $10,000.00; granted the plaintiffs judgment notwithstanding the verdict against Auto–Owners in the amount of $600,000.00; denied the plaintiffs' motion for a new trial, and finally, denied Auto–Owners' motions for a new trial and reconsideration. The issue we address in this opinion is whether the trial court erred in granting plaintiffs' judgment notwithstanding the verdict against Auto–Owners for $600,000.00.

## DISCUSSION

The trial court granted judgment notwithstanding the verdict against Auto–

Owners for $600,000.00, the amount of the Gila County judgment in excess of the policy limits, on the ground that Auto–Owners failed to produce evidence that created a question of fact as to whether the excess judgment was procured by fraud or collusion. Auto–Owners claims this was error arguing that an insurance company is liable for a settlement or stipulated judgment that exceeds the policy limits only if the settlement or judgment is reasonable, non-collusive and non-fraudulent. Auto–Owners contends that the plaintiffs have the burden to show the reasonableness of the Gila County judgment, and that sufficient evidence existed to show the stipulated judgment was unreasonable. The plaintiffs respond that a finding of bad faith renders an insurer liable for the full amount of any judgment entered against its insured.[2]

■ An insurer that erroneously denies coverage and refuses to defend its insured does so at its own peril and is liable on any judgment entered against its insured.[3] *State Farm Mut. Auto. Ins. Co. v. Paynter,* 122 Ariz. 198, 204, 593 P.2d 948, 954 (App.1979); *Samson v. Transamerica Ins. Co.,* 30 Cal.3d 220, 237, 178 Cal.Rptr. 343, 353, 636 P.2d 32, 42 (1981). However, the insurer's liability is not unlimited. Absent

the refusal of a reasonable settlement offer, an insurer is not liable for the amount of a judgment that exceeds the policy limits. *Id.* at 205, 593 P.2d at 955; *State Farm Auto. Ins. Co. v. Civil Service Emp. Ins. Co.,* 19 Ariz.App. 594, 602–03, 509 P.2d 725, 733–34 (1973). *Accord Employers Nat'l Ins. Corp. v. Zurich American Ins.,* 792 F.2d 517 (5th Cir.1986) (applying Texas law); *George R. Winchell, Inc. v. Norris,* 6 Kan.App.2d 725, 633 P.2d 1174, 1178 (1981) (absent a settlement offer, the existence of good or bad faith is irrelevant). *See generally* W. Shernoff, S. Gage and H. Levine, Insurance Bad Faith Litigation § 3.05(1) (1989).

In *Paynter,* we held that a judgment entered against an insured was enforceable against the insurer, "but only to the extent of its policy limits." 122 Ariz. at 199, 593 P.2d at 949. The insured had notified its insurer, State Farm, of an accident in which the insured was involved. State Farm responded that the insurance policy did not provide coverage. Thereafter, the injured party filed a personal injury action against the insured. The insured's counsel mailed a copy of the complaint to State Farm and requested that it defend the action pursuant to the terms of the insurance

---

**2.** The plaintiffs have requested this court to dismiss the portion of Auto–Owners' reply brief which deals with an insurer's liability for an excess judgment absent an offer to settle. The plaintiffs contend this issue was not raised in the trial court, nor in Auto–Owners' opening brief. As a rule, we will not consider issues on appeal that have not been presented in the trial court. *Stokes v. Stokes,* 143 Ariz. 590, 592, 694 P.2d 1204, 1206 (App.1984). We also will not consider issues raised for the first time in appellant's reply brief. *United Bank v. Mesa N.O. Nelson Co.,* 121 Ariz. 438, 443, 590 P.2d 1384, 1389 (1979). Rule 13(c), Arizona Rules of Civil Appellate Procedure, permits an appellant to file a reply brief, but confines its scope to the rebuttal of points raised in the appellee's brief. *See Evans v. Lundgren,* 11 Ariz.App. 441, 445, 465 P.2d 380, 384 (1970). Our review of the record shows that the issue of excess liability and the effect of a settlement offer was before the trial court. Furthermore, plaintiffs argued in their answering brief that in all situations an insurer's bad faith alone renders it liable for an excess judgment. Auto–Owners responded to the argument in its reply brief by asserting that

in addition to bad faith, the insurer must refuse to consider a settlement offer. Accordingly, we decline the plaintiffs' request.

**3.** For purposes of this discussion, we treat Auto–Owners' unconditional denial of coverage as a refusal to defend. *See Samson v. Transamerica Ins. Co.,* 30 Cal.3d 220, 178 Cal.Rptr. 343, 636 P.2d 32 (1981) (it is "sheer sophistry" to argue that an insurer's mere denial of coverage does not constitute a refusal to defend on the ground that the insured never demanded a defense.) *Cf. Manny v. Estate of Anderson,* 117 Ariz. 548, 574 P.2d 36 (App.1977) (insurer's obligation to defend does not arise until the insurer is presented with the complaint). Although Auto–Owners was never presented with the complaint in the Gila County lawsuit nor asked to provide a defense, our conclusion that Auto–Owners is not liable for the excess judgment entered against its insured on the ground that Auto–Owners never refused a settlement offer renders any distinction that may exist between liability for denying coverage and liability for refusing to defend irrelevant.

policy. State Farm denied coverage and refused to participate in the proceedings.

The insured and the injured party then entered into a "Damron Agreement" in which the insured assigned its rights under the policy to the injured party and the injured party agreed not to execute against the insured on any judgment entered in the tort action. The insured admitted liability and a brief trial was held on the issue of damages. The trial court entered judgment against the insured for $143,956.81.

The injured party then filed suit against State Farm to recover the judgment. One of the defenses raised by State Farm was that its liability should not exceed the $50,000.00 policy limit. The trial court disagreed and entered judgment against State Farm for the full amount of the judgment against the insured. On appeal, we modified the judgment to $50,000.00. *Id.* at 205, 593 P.2d at 955. We said that "the decisive factor in extending liability beyond the policy limit was not the refusal to defend, but the refusal to accept an offer of settlement within the policy limits." *Id.* Because State Farm had never refused a settlement offer, its liability for refusing to defend was "confined to the limits of the policy." *Id.*

In reaching this conclusion, we relied, in part, upon the opinion of the California Supreme Court in *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 328 P.2d 198 (1958). There, the insured injured two pedestrians in a crosswalk. The insured's policy contained liability limits of $10,000.00 for each person and $20,000.00 for each accident. The insurer declined coverage and refused to defend a lawsuit filed by the injured parties. On the second day of trial, the insured informed the insurer that the injured parties would settle their claims for $4,000.00. The insurer refused to settle and judgment was rendered against the insured for $26,250.00.

After obtaining an assignment of all rights the insured had against the insurer, the injured parties filed suit against the insurer to recover on the judgment in excess of the policy limits. The jury returned a verdict in favor of the injured parties, but the trial court entered judgment for the insurer notwithstanding the verdict. The California Supreme Court reversed concluding that the insurer was liable for the excess judgment. *Id.* at 663, 328 P.2d at 203.

The decisive factor in fixing the extent of Traders' liability is not the refusal to defend; it is the refusal to accept an offer of settlement within the policy limits. Where there is no opportunity to compromise the claim and the only wrongful act of the insurer is the refusal to defend, the liability of the insurer is ordinarily limited to the amount of the policy plus attorneys' fees and costs. In such a case it is reasoned that, if the insured has employed competent counsel to represent him, there is no ground for concluding that the judgment would have been for a lesser sum had the defense been conducted by insurer's counsel, and therefore it cannot be said that the detriment suffered by the insured as the result of a judgment in excess of the policy limits was proximately caused by the insurer's refusal to defend. This reasoning, however, does not apply where the insurer wrongfully refused to accept a reasonable settlement within the policy limits.

*Id.* at 659–60, 328 P.2d at 201 (citations omitted).

The basis for limiting an excess judgment to the policy limits when there is no settlement offer is based on the following reasoning. When an insurer refuses to defend or denies coverage alone the insurance contract is breached, but there is no causal connection between the breach and the excess judgment. Given competent counsel to represent the insured, the judgment would be the same as if the defense had been conducted by the insurer's counsel. *See George R. Winchell, Inc.*, 633 P.2d at 1177. But, when there is a refusal to settle within the limits of the insurance

contract, then there is a causal connection between the act of the insurer and injury to the insured, i.e. the excess judgment. Had the insurer accepted the reasonable settlement offer, it would have lessened the liability exposure to the insured.[4]

■ Here, the Parkers were represented by counsel in the Gila County lawsuit and there is no claim that their counsel was incompetent. It is undisputed that Auto–Owners was never presented with a complaint in the Gila County suit, nor was it ever notified of the pending lawsuit. Furthermore, the trial court found that no offer of settlement was ever made by the plaintiffs. Plaintiffs do not challenge this finding. Instead, plaintiffs cite several cases which they contend support the proposition that an insurer's bad faith denial of coverage renders it liable for the full amount of a judgment entered against the insured. We have reviewed these cases and find that each involves a situation where the insurer, in addition to denying coverage and/or refusing to defend, refused to entertain an offer to settle. *See Paynter,* 122 Ariz. 198, 593 P.2d 948; *State Farm Auto. Ins. Co. v. Civil Service Emp. Ins. Co.,* 19 Ariz.App. 594, 509 P.2d 725 (1973) (erroneous denial of coverage and consequent refusal to give consideration to a settlement offer exposes insurer to liability in excess of policy limits); *General Acc. Fire & Life Assur. Corp. v. Little,* 103 Ariz. 435, 443 P.2d 690 (1968) (insurer liable for $12,500.00 judgment against insured even though policy limit was $5,000.00 where insurer refused to settle for $4,000.00); *Farmers Ins. Exch. v. Henderson,* 82 Ariz. 335, 313 P.2d 404 (1957) (insurer's failure to terminate litiga-

tion in good faith by settlement renders it liable for full amount of judgment).

We hold that when an insurer denies coverage in bad faith, it is not liable for the amount of a judgment entered against its insured that exceeds the policy limits absent a refusal of a reasonable settlement offer, unless the insured can establish other causal connections between the insurer's act and the excess judgment.[5]

Because Auto–Owners never refused a settlement offer, and there is no claim that the Parkers' trial counsel was incompetent, Auto–Owners is not liable for the amount of the judgment entered against the Parkers in the Gila County lawsuit that exceeds the $300,000.00 policy limits.

## CONCLUSION

We reverse the trial court's grant of judgment notwithstanding the verdict against Auto–Owners for $600,000.00. No settlement offer was ever presented to Auto–Owners, and absent rejection of a settlement offer, Auto–Owners is not liable for the amount of the judgment against its insured that exceeds the policy limits.

GRANT, C.J., and GERBER, J., concur.

---

**4.** Obviously, there may be other circumstances in which a causal connection between the denial of coverage or the refusal to defend and the excess judgment occurs without a reasonable offer to settle. In *Thomas v. Western World Ins. Co.,* 343 So.2d 1298, *cert. dismissed,* 348 So.2d 955 (Fla.1977), the court said that if the insured suffers a default or final judgment without the benefit of an attorney, or where the judgment would have been lower if there had been a proper defense, then a causal connection could be established even though no settlement offer

had been made. What the court simply said was a causal connection existed between the acts of the insurer and the excess judgment.

**5.** We deal here only with damages incurred as a result of the accident in the underlying lawsuit. Our holding is in no way meant to limit the damages recoverable for emotional distress, attorneys' fees and the like incurred or suffered as a result of the insurer's bad faith.