(967 P.2d 348)

No. 77,335
No. 77,682

JAMES M. SOURS, *Appellant*, v. ROLLIN RUSSELL, *Defendant*, and
AMERICAN STATES INSURANCE COMPANY, *Appellee*.

Opinion filed November 13, 1998.

*Paul Hasty, Jr.*, and *Robert A. Mintz*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellant.

*James C. Morrow* and *Mark D. Holmstrom*, of Myerson & Morrow, of Kansas City, Missouri, for appellee.

Before ROYSE, P.J., LEWIS and KNUDSON, JJ.

ROYSE, J.:   This is a garnishment proceeding. The district court ruled in favor of the garnishee, American States Insurance Company (American States), and the plaintiff, James Sours, appeals.

This case has a complicated factual and procedural history. Highly summarized, the record indicates that James Sours was involved in a motor vehicle collision with Rollin Russell on September 26, 1989. Russell was insured by American States at the time of the collision. In January 1990, American States offered to pay Sours the $25,000 limits under its policy covering Russell. Sours refused the offer.

Sours subsequently filed suit against Russell. American States hired attorney John O'Connor to defend Russell in the negligence action. Eventually, the case was tried to the court, and on January

23, 1991, the district court granted judgment to Sours against Russell in the amount of $107,114.42.

American States, through O'Connor, tendered to Sours a check for $25,000 on the condition that Sours agree not to execute against Russell's personal assets. Sours refused to sign the covenant not to execute. American States made several unsuccessful efforts to tender its policy limits to Sours. Ultimately, American States paid the $25,000 into the district court, and the court ordered the funds disbursed to Sours. In addition, Sours received $100,000 from his insurance company, Allstate.

On August 2, 1993, Sours filed a garnishment against American States, claiming that American States was obligated to pay him the full amount of the judgment he had obtained against Russell. Sours alleged that American States provided a negligent or bad faith defense of Russell in the tort case. In particular, Sours' allegations included the following claims: (1) American States failed to undertake discovery on behalf of Russell; (2) American States waived a jury trial; (3) American States waived the opportunity to cross-examine the treating physicians and expert witnesses; (4) American States failed to have Russell appear and testify at the trial of the negligence case; (5) American States failed to provide Russell a meaningful defense on the issues of liability and damages; and, (6) American States failed to consult with Russell regarding the foregoing decisions in connection with the negligence case.

After a hearing on the garnishment claim, the district court ruled in favor of American States. Specifically, the district court determined that American States did not act negligently or in bad faith in providing a defense to Russell. Second, the district court ruled that Sours had failed to present evidence that any act or omission of American States caused or contributed to a different result in the negligence case. Third, the district court ruled that Sours had failed to present evidence that Russell had sustained any damages as a result of American States' conduct in providing Russell's defense. The district court further granted American States' motion for fees against Sours. Sours appeals.

As a preliminary matter, we want to emphasize that this case involves an unusual failure to defend claim. Nearly every reported

case which has addressed such a claim arose out of an insurance company's failure to settle within policy limits, with the result that the insured was exposed to a judgment which exceeded the policy limits. See, *e.g.*, *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990); *Rector v. Husted*, 214 Kan. 230, 519 P.2d 634 (1974); *Gilley v. Farmer*, 207 Kan. 536, 485 P.2d 1284 (1971); *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 (1969); *Levier v. Koppenheffer*, 19 Kan. App. 2d 971, 879 P.2d 40, *rev. denied* 255 Kan. 1002 (1994). In this case, however, one of Sours' complaints is that American States did try to settle the tort case. In fact, the record shows that American States repeatedly made unsuccessful attempts to settle the case for its policy limits in exchange for Sours' agreement not to execute on Russell's assets. Because of the unusual nature of the claims made in this case, the failure to settle precedents have only limited application to the issues presented here.

## PROOF OF CAUSATION AND DAMAGES

While Sours raises numerous arguments on appeal, we will focus on his contentions that the district court erred by finding he failed to prove causation or to show that Russell sustained any damages as a result of American States' negligence or bad faith. Sours' position is not that he presented evidence which the district court overlooked. Instead, he claims that evidence of causation and damages is unnecessary—damages to the insured should be presumed as a matter of law from the insurance company's negligence or bad faith. This contention is not persuasive.

We begin our analysis by noting that Sours is pursuing a contract claim. Sours, as a judgment creditor, stands in the shoes of Russell, the judgment debtor, to pursue a claim that American States breached its implied agreement to use reasonable care and act in good faith in defending or settling claims against its insured. See *Aves v. Shah*, 258 Kan. 506, 512, 906 P.2d 642 (1995); *Gilley*, 207 Kan. at 544; annot., 60 A.L.R.3d 1190, 1196, 1199.

As a general rule, a party seeking damages for breach of warranty must prove the warranty, the breach thereof, and the loss that resulted from the breach. *Fox v. McKay Motor Co.*, 188 Kan. 756, 761, 366 P.2d 297 (1961); see also *Springfield Tent & Awning Co.*

*v. Rice*, 202 Kan. 234, 238, 447 P.2d 833 (1968) (affirming directed verdict granted by district court on grounds that plaintiff failed to prove that defendant's actions caused plaintiff to sustain any damages). Put another way, the measure of damages for breach of warranty is the loss directly and naturally resulting from the breach. *Ricklefs v. Clemens*, 216 Kan. 128, Syl. ¶ 1, 531 P.2d 94 (1975); see also *Kansas State Bank v. Overseas Motosport, Inc.*, 222 Kan. 26, 27, 563 P.2d 414 (1977) (noting that Kansas follows the rule of *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145, 5 Eng. Rul. Cas. 502 [1854]).

The cases which arise from an insurer's failure to settle within policy limits apply the same measure of damages. For example, in *Levier*, 19 Kan. App. 2d at 980, this court stated that an insurer that acts negligently or in bad faith in failing to settle a case is liable for the full amount of the insured's resulting loss. The same measure of damages was recited in *Rector v. Husted*, 214 Kan. 230, Syl. ¶ 1, and *Smith v. Blackwell*, 14 Kan. App. 2d 158, 164, 791 P.2d 1343, *rev. denied* 246 Kan. 769 (1990). Similarly, in *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 232 Kan. 76, 78-80, 652 P.2d 665 (1982), the court observed that damages for breach of contract are limited to the pecuniary losses sustained. The court further concluded that the same measure of damages applies to actions for breach of an insurance contract, including claims based on the insurer's failure to settle within policy limits. See also *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 842, 934 P.2d 65 (1997) (in action for breach of insurer's implied good faith settlement obligation, damages awarded should place injured party in the same position as if breach had not occurred); *Medical Mutual v. Evans*, 91 Md. App. 421, 432, 604 A.2d 934 (1992) (where insurer negligently fails to settle case within policy limits, the measure of the insured's damages is generally the difference between the amount of judgment obtained and the policy limits).

*Levier*, 19 Kan. App. 2d 971, provides a good example of how to apply the resulting loss rule. The case arose out of an automobile accident. Levier brought suit against the other driver, Koppenheffer. Koppenheffer was insured under a policy with AEtna. After

reaching a settlement with a third person involved in the wreck, AEtna had a balance of $71,900 under the policy to pay Levier's claims. Levier offered to settle his claim for $100,000. AEtna did not accept the offer or communicate it to Koppenheffer. Levier subsequently obtained a $600,000 judgment against Koppenheffer.

Levier then instituted garnishment proceedings against AEtna on the grounds that it had neglected to protect the rights of its insured in the settlement negotiations. The trial court found that AEtna had acted negligently and in bad faith by failing to communicate Levier's offer to Koppenheffer in a reasonable manner. This court affirmed that determination on appeal. We did, however, modify the judgment entered by the district court, because it did not accurately reflect Koppenheffer's resulting loss:

"Koppenheffer's loss was not $528,100 ($600,000 judgment minus $71,900 payment from AEtna) as the district court concluded. If Koppenheffer had accepted Levier's original settlement offer, he would have been personally liable for $28,100. It follows that AEtna's failure to settle cost Koppenheffer $500,000. Since AEtna's negligence resulted in the loss of $500,000 to its insured, that is the proper amount for the judgment in this case. The district court's award of $528,100 in damages should therefore be modified to $500,000." 19 Kan. App. 2d at 981.

A similar approach to damages has been taken in those cases which arise from an insurer's wrongful refusal to defend an action against the insured. The damages recoverable in the refusal to defend situation were delineated in *George R. Winchell, Inc. v. Norris*, 6 Kan. App. 2d 725, 633 P.2d 1174, *rev. denied* 230 Kan. 817 (1981). In that case, the plaintiff obtained a default judgment of $19,710.95 against the defendant for property damage sustained in a car wreck. The plaintiff then initiated garnishment proceedings against the defendant's insurer for the full amount of the judgment, asserting the insurer wrongfully refused to defend its insured. The district court entered judgment against the insurer for its policy limits of $10,000. The plaintiff appealed, and this court affirmed the district court's decision.

The *Winchell* decision first notes the majority rule that an automobile liability insurer who wrongfully refuses to defend an action against its insured is liable for (1) the amount of the judgment

rendered against the insured up to the limits of the policy; (2) the expenses incurred by the insured in defending the suit; and (3) any additional damages traceable to its refusal to defend. 6 Kan. App. 2d at 727. The decision also recognizes that in such a case the insured has the burden of establishing damages. 6 Kan. App. 2d at 729.

"Absent a settlement offer, the plain refusal to defend has no causal connection with the amount of the judgment in excess of the policy limits. If the insured has employed competent counsel to represent him, there is no basis for concluding that the judgment would have been for a lesser sum had the defense been conducted by insurer's counsel." 6 Kan. App. 2d at 729.

See also *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 15 Kan. App. 2d 153, 165, 804 P.2d 1012, *rev. denied* 248 Kan. 997 (1991) (no showing that judgment against insured would have been smaller if insurer had provided defense to insured as required by policy).

In view of the conclusions reached in *Levier* and *Winchell*, we conclude that an insurer that acts negligently or in bad faith in defending a case against its insured is liable for the damages traceable to its conduct. The party asserting such a breach of warranty claim has the burden of proving the amount of damages.

The cases cited by Sours do not warrant a different conclusion. For example, Sours cites *Bogle v. Conway*, 199 Kan. 707, 433 P.2d 407 (1967), as support for his contention that damages to Russell must be presumed as a matter of law. *Bogle* involved the rules applicable to a reservation of rights: When an insurer proposes to defend an insured under a reservation of rights, the insurer must provide a timely, clear notice to the insured that it disclaims liability under the policy. If it fails to provide the required notice, the insurer may not disclaim liability under its policy in a later garnishment proceeding.

The *Bogle* case arose out of a car wreck. Gary Bogle was a passenger in a car driven by Donald Conway. Bogle was killed when Conway's car collided with another car driven by Henry Fisher. Farm Bureau was the insurer for both cars. When Bogle's parents filed a wrongful death action, Farm Bureau obtained an agreement from each driver that its defense of the case on his behalf would

not constitute a waiver of Farm Bureau's right to deny liability under the policy.

After the plaintiffs obtained a judgment against the defendants in the wrongful death action, they initiated garnishment proceedings against Farm Bureau. The question then arose whether Farm Bureau's nonwaiver agreements adequately informed Conway and Fisher of Farm Bureau's position. The district court ruled the agreements were not sufficient and granted summary judgment in favor of the plaintiffs. Farm Bureau appealed, arguing that it should not be estopped to assert its defense under the policy because the insureds had not shown prejudice. The Supreme Court rejected that argument and affirmed the district court's decision. 199 Kan. at 714.

Sours emphasizes one particular phrase from the *Bogle* decision, "the course cannot be rerun," to support his contention that proof of causation and damages is unnecessary in this case. 199 Kan. at 714. Sours' reliance on *Bogle* is misplaced. The factors which distinguish *Bogle* from this case are as follows: First, in *Bogle* the insurer denied coverage. American States has never denied that its policy afforded coverage to Russell. Second, the *Bogle* opinion focused on the possibility of a conflict of interest between the insured and insurer because the insurer might use the underlying tort case to establish its policy defense. See *Boone v. Lowry*, 8 Kan. App. 2d 293, 300, 657 P.2d 64, *rev. denied* 232 Kan. 875 (1983); see also *Golf Course Superintendents Ass'n v. Underwriters*, 761 F. Supp. 1485, 1493 (D. Kan. 1991) (prejudice to insured may be inferred from inadequate reservation of rights, where situation presents possible conflict of interest). No such possibility of a conflict of interest is present here. Finally, *Bogle* was an action to recover damages under the policy. In this case, Sours seeks to recover damages in excess of American States' policy limits. In sum, *Bogle* addresses whether an insurer will be estopped to assert a policy defense; it does not purport to discuss the proof required to establish a claim that an insurer breached the implied warranty to use reasonable care and act in good faith in defending a suit against its insured.

These factors also distinguish a second case relied on by Sours, *Pendleton v. Pan American Fire and Casualty Company*, 317 F.2d 96, 99 (10th Cir. 1963). Like *Bogle*, *Pendleton* involved an insurer that provided an unconditional defense to its insured and then, after settlement of the underlying case, denied that it had any liability under the insured's policy. Emphasizing the conflict of interest between the insurer and its insured, the court applied the long-established rule that an insurer that has undertaken an unconditional defense may not then disclaim coverage under the policy. *Pendleton* does not purport to lay down rules for the proof required to establish a claim against an insurer on the grounds of negligent defense.

Another case cited by Sours is *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 (1969). *Bollinger* involved a claim that an insurer was negligent in failing to settle a personal injury case within its policy limits. Sours cites language from the *Bollinger* opinion which indicates that the insurer's decision not to settle must be evaluated in light of the information available when the settlement offer was refused. From that language, Sours reasons that the quality of a defense should not be measured by the result obtained. Sours' analysis is not persuasive. The language Sours relies on has nothing to do with the measure of damages, and the *Bollinger* opinion does not purport to discuss the proof required to show causation and damages to sustain a breach of warranty claim.

Finally, Sours cites *Anderson v. Surety Co.*, 107 Kan. 375, 191 Pac. 583 (1920), in support of his contention that he need not prove causation and damages. *Anderson* is one of the few Kansas cases which involves a claim that an insurer was negligent in providing a defense to its insured.

Anderson operated a strip mine. He was insured under a policy from Southern Surety Co. against loss or damage on account of injuries sustained by his employees. One of Anderson's employees was injured while using dynamite. The employee sued Anderson, and the insurance company undertook to provide Anderson's defense. Ultimately, the employee obtained a judgment for $8,650 against Anderson. The insurance company paid its policy limits, and Anderson paid the balance of the judgment.

Anderson then sued his insurer for negligence in conducting the defense. The court determined that the insurer had failed to set up a legal defense which would have barred the employee's claim: a statute precluded an employee who used explosives unlawfully from recovering damages for his resulting injuries. In affirming the district court's judgment in favor of Anderson, the court stated:

"Where an insurance company insures an employer of labor against loss or damage on account of injuries sustained by his employees, takes charge of the defense in an action bought by an insured workman, and through negligence in not properly conducting the defense judgment is obtained against the employer for an amount in excess of that named in the policy, the insurance company *is liable to the employer for the damages thus occasioned.*" (Emphasis added.) 107 Kan. 375, Syl. ¶ 1.

Contrary to Sours' implication, the *Anderson* decision does not hold that evidence of causation and damages is unnecessary. Instead, Anderson indicates that the insurer will be liable for the damages which are shown to have resulted from the negligence. In *Anderson*, the measure of damages was simple: Because the insurer failed to assert a defense which would have completely exonerated the employer from liability, the insurer was liable to the employer for the entire amount the employer was required to pay to the employee. See also 7C Appleman, Insurance Law and Practice § 4687 (Berdal ed. 1979) (claim of negligent defense requires proof that neglect has directly resulted in damages, measured by the value of the rights which were lost by default).

We have carefully considered Sours' arguments and authorities, but we find no basis for holding that causation and damages in this case should be presumed. For the reasons outlined above, we conclude that the district court did not err in entering judgment for American States on Sours' negligence/bad faith claim, holding that Sours was required to prove causation and damages and failed to do so. In light of this conclusion, we need not address Sours' other arguments regarding the alleged negligence and bad faith of American States and O'Connor or the effect of Allstate's subrogation interests. Nor is it necessary for us to examine American States' contentions regarding the release it obtained from Russell.

## INTEREST

Sours argues that the district court erred by holding that American States was not liable for interest on the judgment. Sours contends that the district court's ruling was contrary to *Stamps v. Consolidated Underwriters*, 208 Kan. 630, 493 P.2d 246 (1972), and *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990). We agree.

In *Stamps*, the Supreme Court construed a standard interest clause in a liability insurance policy. The court held that under such a provision the insurer is liable for interest on the judgment "until the amount of the policy limit, plus interest on the whole judgment, has been tendered, offered or paid." 208 Kan. 630, Syl. ¶ 2. The *Stamps* holding was approved and applied in *Glenn*.

American States attempts to avoid the *Stamps* rule by arguing that its policy language differs from that construed in the prior cases. American States' attempt to distinguish *Stamps* is not persuasive. Specifically, American States points to one sentence contained in its policy: "Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage." The sentence relied on by American States, however, does not differ in any meaningful way from the policy language construed in *Stamps*. There, the company's obligation to pay interest continued " 'until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon.' " 208 Kan. at 633.

American States also cites an 8th Circuit case, *Farmers Alliance Mut. Ins. Co. v. Bethel*, 812 F.2d 412 (8th Cir. 1987), which held that an insurer's prejudgment offers to pay its policy limits terminated its obligation to pay interest. Federal court decisions which discuss issues of state law, however, are not binding on and have limited precedential effect in state courts. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, Syl. ¶ 12, 941 P.2d 1321 (1997).

The policy language construed in *Stamps* and contained in American States' policy both require the insurer to pay interest accruing after entry of judgment until tender of the amount due under the policy on the judgment. Obviously, prejudgment offers

cannot include interest on a judgment which has not yet been entered. Notably, the Supreme Court applied the *Stamps* rule in *Glenn v. Fleming*, requiring AEtna to pay interest on the full amount of the judgment, notwithstanding the fact that AEtna had offered its policy limits prior to trial. 247 Kan. at 301. Additionally, the policy language contemplates unconditional offers of payment, not conditional offers such as American States made in this case. Finally, American States' argument on appeal that it is not liable for any interest because of its prejudgment offers is hard to square with its request to the district court that it be allowed to pay $96.82 in interest into court and its repeated arguments in the district court that its tender of policy limits within 2 days of the judgment excused it from paying interest on the entire judgment.

We do not find persuasive American States' argument that its obligation to pay interest under its policy has been abrogated by the fact that Allstate has a subrogation interest in Sours' recovery.

To date, American States has not tendered the full amount due under the *Stamps* decision. The district court erred by holding American States was not liable for interest on the judgment. That holding is reversed, and the case is remanded for a determination of the amount of interest due.

## ATTORNEY FEES

The district court denied Sours' request for attorney fees under K.S.A. 40-256 and instead granted fees to American States pursuant to K.S.A. 60-721. Sours appeals.

K.S.A. 40-256 provides:

"[I]n all actions hereafter commenced, in which judgment is rendered against any insurance company . . ., if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action."

Whether an insurer has refused without just cause or excuse to pay the full amount of the insured's loss is a question for the district court as the trier of the facts to determine. *Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. 561, Syl. ¶ 1, 470 P.2d 756 (1970).

A garnishment proceeding falls within the scope of K.S.A. 40-256. *Farmco, Inc. v. Explosive Specialists, Inc.,* 9 Kan. App. 2d 507, Syl. ¶ 4, 684 P.2d 436 (1984); see *Smith v. Blackwell,* 14 Kan. App. 2d 158, 168, 791 P.2d 1343 (1989), *rev. denied* 246 Kan. 769 (1990).

The statute makes no provision for awarding fees to an unsuccessful plaintiff. *Girrens v. Farm Bureau Mut. Ins. Co.,* 238 Kan. 670, 681, 715 P.2d 389 (1986). Because Sours was unsuccessful on his negligence/bad faith claims, the district court did not err in denying his request for fees in connection with that claim. As we have noted above, however, the district court erred by holding that American States was not liable for interest on the judgment. Thus, the district court needs to determine whether American States refused to pay the interest due without just cause or excuse. If so, the district court will need to determine a reasonable sum for attorney fees incurred in connection with that claim.

Sours' final argument on appeal is that the district court erred by awarding fees to American States under K.S.A. 60-721(a)(5). That statute authorizes an award of fees to the garnishee against a party who controverts the garnishee's answer without good cause. In such a case, the district court may award the garnishee a judgment for those expenses necessarily incurred in substantiating its answer.

A party claiming error has the burden of furnishing a record showing the prejudicial error in the lower court. In the absence of such a record, an appellate court presumes that the action of the lower court was proper. *State v. Moncla,* 262 Kan. 58, 68, 936 P.2d 727 (1997).

The record on appeal does not include the order of garnishment, American States' answer, American States' motion for fees, Sours' response to that motion, or the transcript of the hearing on American States' motion for fees. Sours has not provided a sufficient record for us to examine this claim of error.

Affirmed in part, reversed in part, and remanded for further proceedings.