(62 P.3d 685)

No. 88,320

J. MICHELLE JOHNSON and ALAN L. JOHNSON, *Appellees*, v. WESTHOFF SAND COMPANY, INC., *Defendant*, v. MID-CONTINENT CASUALTY COMPANY, *Appellant*.

Opinion filed February 7, 2003.

*James Borthwick* and *Brian Martin*, of Blackwell Sanders Peper Martin LLP, of Kansas City, Missouri, and *William Corum*, of the same firm, of Overland Park, for appellant.

*Rex A. Sharp*, of Gunderson, Sharp & Rhein, P.C., of Prairie Village, for appellees.

Before BEIER, P.J., ELLIOTT and KNUDSON, JJ.

KNUDSON, J.: In this garnishment proceeding Mid-Continent Casualty Company (Mid-Continent) appeals from the entry of judgment in favor of the garnishors, J. Michelle Johnson and Alan

L. Johnson, who earlier had obtained a default judgment of $2,268,784.52 against Mid-Continent's insured, Westhoff Sand Company, Inc. The underlying Mid-Continent policy provided $1,000,000 in liability coverage. The district court rejected Mid-Continent's policy defenses and concluded the insurance company wrongfully refused to defend its insured. An excess judgment was entered against Mid-Continent, with attorney fees of $1,202,336.65 awarded under K.S.A. 40-256. Mid-Continent has filed a timely appeal.

Except for the amount of attorney fees awarded, we affirm the judgment of the district court. We set aside the award of attorney fees and remand to the district court for further hearing to determine an appropriate award.

## Stipulation of Facts

The district court's decision was based upon the following stipulated facts agreed to by the parties:

"1. On June 14, 1992, Mr. Shultz was driving a semi and passing another truck at night in a construction zone going uphill without any signs or markings on Highway 54. Alan Johnson, driving his family in the other direction, encountered the two semis side-by-side coming at him. Alan Johnson went for his ditch, but so did Mr. Shultz. To avoid the head on collision with a semi, Alan Johnson attempted to shoot the gap between the oncoming semis resulting in a wreck injuring Alan and permanently ripping off Michelle's dominant right arm just below the elbow.

"2. On December 3, 1993, plaintiffs J. Michelle Johnson and Alan L. Johnson ('Alan and Michelle Johnson' or 'the Johnsons') sued in this Court: Roger L. Shultz, a truck driver; Southwest Transportation Company, the trucking company Mr. Shultz was driving for; Great West Casualty Company, Southwest Transportation Company's insurer; J. H. Shears' Sons, Inc., the general contractor ('Contractor') for the construction job on Highway 54 where the wreck occurred; C-Hawk Construction, Incorporated, and Twin Traffic Marking Corporation, both believed to be subcontractors responsible for signage on the construction job.

"3. In early January, 1994, while the Johnsons' attorneys were still trying to serve some of the defendants with service of process, Mr. Shultz gave notice that he had filed for Chapter 7 Bankruptcy. Ultimately Mr. Shultz, due to the bankruptcy and automatic stay, had to be dismissed from the case in April, 1994, as reflected in the First Amended Petition.

"4. On January 21, 1994, Michelle Johnson filed a Statement of Monetary Damages in the amount of $5,000,000, while Alan Johnson filed a Statement of Monetary Damages in the amount of $1,000,000, under Supreme Court Rule 118.

"5. On May 13, 1994, the Johnson[s] moved to file a Second Amended Complaint to drop Twin Traffic Marking Corporation (which discovery showed had no construction duties at the time of the wreck) and to add Revelle Leasing, Inc. (owner of the semi); Russell Leasing, Inc. (co-employer of Mr. Shultz); Westhoff Brothers Paving and Sand Company (a road construction subcontractor) ('Westhoff Brothers')[;] and the Kansas Department of Transportation (KDOT), since in April, 1994, some of the defendants claimed KDOT and Westhoff Brothers Paving and Sand Company were at fault.

"6. The Johnsons were granted leave to file the Second Amended Petition, which was filed on June 3, 1994. The Johnsons then attempted to serve the additional parties with the Second Amended Petition by certified mail, but the certified letter to Westhoff Paving went unclaimed.

"7. By mid-July, 1994, Westhoff Brothers still had not been served, some of the additional defendants had not answered the Second Amended Petition, and Revelle Leasing, Inc. had given notice of Chapter 7 Bankruptcy.

"8. The Barton County Sheriff was requested on July 23, 1994 to personally serve Earl Westhoff for Westhoff Brothers, which was done on August 1, 1994. On August 1, 1994, the Johnsons' attorneys spoke with Earl C. Westhoff by telephone. Earl Westhoff stated that he was operating a company by the name of Westhoff Sand Company, Inc. and doing construction work on U.S. Highway 54 during June, 1992, in the area where the wreck occurred. The Johnsons' attorneys then contacted the Kansas Secretary of State and found that Westhoff Sand Company, Inc. had its principal place of business at 3223 Railroad Avenue, Great Bend, Kansas 67530 and its Registered Agent was Earl C. Westhoff.

"9. On August 9, 1994, the Johnsons moved for leave to file a Third Amended Petition pursuant to K.S.A. 60-215(c), substituting Westhoff Sand Company, Inc. for the incorrectly named Westhoff Brothers.

"10. On September 16, 1994, this Court granted the Johnsons leave to file a Third Amended Petition.

"11. On September 22, 1994, the Third Amended Petition was filed naming Westhoff Sand Company, Inc. ('Westhoff') as a defendant. The Johnsons alleged that Westhoff contracted with KDOT to work on the Highway 54 project and removed permanent 'no passing' and other warning signs without placing temporary warning signs in the construction zone which it had a duty to do, all resulting in injury and damages to the Johnsons.

"12. On September 28, 1994, the Court orally entered the following initial scheduling order: mediation to be completed by December 31, 1994, plaintiffs identify experts by February 28, 1995, defendants identify experts by April 30, 1995, witness and exhibit lists exchanged by April 30, 1995, and discovery cutoff of June 30, 1995, with a pre-trial on July 11, 1995.

"13. The Third Amended Petition was served on Westhoff by certified mail on September 29, 1994. Westhoff's Answer was due 20 days thereafter, or on October 19, 1992.

"14. The Johnsons did not file a motion under K.S.A. 60-203 with respect to Westhoff, so the lawsuit against Westhoff was commenced upon service on September 29, 1994.

"15. The Johnsons were deposed on October 13, 1994, with other depositions scheduled for December, 1994.

"16. Westhoff failed to file an Answer by October 19, 1994.

"17. Neither Westhoff nor Earl Westhoff ever notified Mid-Continent of the June 14, 1992 accident, or the lawsuit served on Westhoff. Neither Westhoff nor Earl Westhoff ever notified Mid-Continent of the Third Amended Petition or its service.

"18. On November 3, 1994, after receiving no Answer from Westhoff, the Johnsons' attorneys determined from KDOT who insured Westhoff, and telephoned Mid-Continent. This was Mid-Continent's first oral notice of the claim and lawsuit. Mid-Continent asked the Johnsons' attorney to forward written information.

"19. On November 4, 1994, the Johnsons' attorney mailed a letter and a copy of the Third Amended Petition, and notice of the scheduled December 8, 1994 mediation direct to the insurer, Mid-Continent. See Exhibit A attached and incorporated by reference.

"20. On November 7, 1994, Mid-Continent received from the Johnsons' attorney written notice of the lawsuit, the Summons and a copy of the Third Amended Petition naming Westhoff, and notice of the December 8, 1994 mediation. See Mid-Continent adjuster's handwritten contemporaneous notes attached and incorporated by reference as Exhibit B. See also paragraph 2 of the November 22, 1994 letter of Mid-Continent attached and incorporated by reference as Exhibit C.

"21. Upon receipt of the written notice from the Johnsons' attorney, Mid-Continent attempted to locate any policy issued to Westhoff to confirm that it had insured Westhoff and to determine if that policy might provide coverage for the Johnsons' claims against Westhoff.

"22. Policy No. GL149726 (the 'Policy') was issued by Mid-Continent to Westhoff and was in effect on June 14, 1992, but because it expired on January 1, 1993, it was already in off-site storage. Mid-Continent retrieved the policy from storage on November 16 or 17, 1994, and then confirmed that Westhoff was an insured at the time of the wreck under the Policy, with policy limits of $1,000,000.

"23. Mid-Continent's adjuster referenced the need to send a reservation of rights letter for delayed notice.

"24. On November 17, 1994, Mid-Continent called Thurman-Morrison & Associates, the local agent in Great Bend, Kansas, who handled the insurance policy, and received a telephone number for Westhoff Brothers (believed to be a related company), and for father, Earl Westhoff, and son, Paul Westhoff, who were believed to be principals in Westhoff. Mid-Continent also learned that Randy Hayden was the agent who handled Westhoff's account after Thurman-Morrison & Associates and received Randy Hayden's telephone number.

"25. On November 18, 1994, Mid-Continent attempted to call Earl Westhoff at his home telephone number and there was no answer, and then attempted to call Paul Westhoff at his home telephone number, which was no longer in service.

"26. On November 21, 1994, Mid-Continent again attempted to call Earl Westhoff but received no answer.

"27. On November 21, 1994, Mid-Continent then called Randy Hayden, who told Mid-Continent:

(a) Westhoff was one of his clients in 1993 (after the Mid-Continent insurance policy expired), but Westhoff went out of business and still owed Hayden's agency approximately $5,600, which amount had been turned over to a collection agency;

(b) Paul Westhoff split with his dad under bad circumstances, apparently left town owing lots of people money, and there was no current telephone listing for Paul Westhoff in the then current local telephone directory; and

(c) Earl Westhoff's home address in Great Bend, Kansas and confirmed from the current local telephone directory Earl Westhoff's home telephone number that Mid-Continent already had.

"28. On November 21, 1994, Mid-Continent tried calling Westhoff at the telephone number provided for Westhoff Brothers by Thurman-Morrison & Associates, but there was no answer, and Mid-Continent also tried to call Earl Westhoff at home, but there was no answer.

"29. Mid-Continent then called the Johnsons' attorney on November 21, 1994, to request additional information. The Johnsons' attorney confirmed that he had had problems obtaining service on Westhoff, but did so on September 29, 1994. The Johnsons' attorney also informed Mid-Continent that he believed Earl Westhoff was then working in Missouri in the St. Joseph area. The Johnsons' attorney again suggested Mid-Continent send a representative to the December 8, 1994 mediation, and offered access to pleadings and discovery.

"30. On November 22, 1994, a Mid-Continent adjuster, after assigning Claim Number 1401540 to the matter, sent a letter by certified mail to Westhoff at its last known work address, with a copy to the Thurman-Morrison & Associates agency. See Exhibit C attached and incorporated by reference.

"31. On the same date, Mid-Continent sent an identical letter to Earl Westhoff at the last residential address Mid-Continent had been able to obtain for him, with a copy to the Thurman-Morrison & Associates agency.

"32. The Mid-Continent certified letters to Westhoff and Earl Westhoff were unclaimed. See Exhibit D certified letter returns, attached and incorporated by reference.

"33. Mid-Continent never had any contact with Westhoff or any Westhoff employees.

"34. Mid-Continent did not defend Westhoff in the lawsuit.

"35. Other than the agent, Westhoff's subsequent agent, and the Johnsons' attorney, Mid-Continent did not contact anyone else regarding Westhoff, the Johnsons, or the lawsuit.

"36. On December 8, 1994, a mediation was held in Kansas City which all counsel, parties, and insurers attended, except Mid-Continent and Westhoff. The mediation did not result in a settlement, but the case was settled in the weeks following, with the exception of Westhoff/Mid-Continent which never appeared or answered.

"37. On January 13, 1995, the Johnsons moved for default judgment against Westhoff, served a statement of monetary damages, served a Notice of Hearing for January 27, 1995, and presented to this Court a Journal Entry of Default Judgment which was approved and signed on February 1, 1995 in the amount of $2,268,784.52. The Johnsons did not serve any of these pleadings on Mid-Continent.

"38. Before default judgment, the Johnsons never made a settlement demand to Mid-Continent or to Westhoff, and Mid-Continent never made a settlement offer to the Johnsons.

"39. After the default judgment, Affidavits were signed stating that the Johnsons' attorneys would have recommended and the Johnsons would have accepted a policy limits offer of $1,000,000 from Mid-Continent to settle with Westhoff. See Affidavits, Exhibit E, attached and incorporated by reference.

"40. In February, 1997, the Johnsons instituted this garnishment action against Mid-Continent to collect on the default judgment.

"41. Westhoff never assigned any claims it may have had or claimed to have against Mid-Continent to the Johnsons.

"42. The Certificate of Insurance filed by subcontractor Westhoff with KDOT was in the amount of $1,000,000 for the highway construction project in question. Exhibit F, attached and incorporated by reference.

"43. J. H. Shears' Sons, Inc. entered into a subcontract agreement with Westhoff providing that the agreement between J. H. Shears' Sons, Inc. and KDOT 'is made a part of this Subcontract Agreement and incorporated herein by this reference.' Specifically, paragraph 2, provides that the Subcontract Agreement was deemed to 'include the Contract [between J. H. Shears' Sons, Inc. and KDOT] including the general and special conditions . . . [and] special provisions . . . . In all respects, the Subcontractor, by execution of this Subcontract Agreement, assumes toward the Contractor the same obligations and responsibilities that the Contractor assumes toward the Owner [KDOT] in the Contract Documents.' Paragraph 10 of the Subcontract Agreement provides that 'prior to commencing any work hereunder, the Subcontractor will furnish to the Contractor a certificate from Subcontractor's insurance carriers as evidence that Subcontractor is properly covered with the insurance coverages in the amounts and/or limits not less than those proscribed [sic] below (in thousands): general liability insurance $1,000.'; i.e. $1,000,000.' The KDOT Standard Specifications for State Road and Bridge Construction ('Blue Book') applied to Westhoff's Subcontract.

"44. A true and correct copy of Mid-Continent's Policy No. GL149726, issued to Westhoff and in effect on June 14, 1992 is attached as Exhibit G, and incorporated by reference.

"45. Kansas procedural and substantive law applies to this case."

Mid-Continent presents the following issues on appeal: (1) Did the district court err in determining the parties proceeded to trial on stipulated facts; (2) did the court err in concluding Mid-Continent's policy defenses were without legal merit; (3) did Mid-Continent act without just cause and excuse entitling the Johnsons to attorney fees; (4) was there sufficient evidence to support the amount of the court's award for attorney fees; and (5) did the court err in finding the Johnsons were entitled to recover damages in excess of Westhoff's policy limits?

## The Legal Standard Supporting Judgment

Before considering the substantive issues on appeal, we must first examine the legal standard adopted by the district court in granting judgment against Mid-Continent. Initially, both parties filed motions for summary judgment based upon stipulated facts. Subsequently, the parties framed the written legal issues to be decided by the court. After oral argument, the court took all issues under advisement. Two years later the court entered its judgment, noting that the parties had agreed to try the garnishment issues upon stipulated facts.

Mid-Continent claims the district court erred in applying legal standards applicable to bench trials rather than summary judgment standards. Mid-Continent is adamant there was never any agreement by the parties and the court that the submission went beyond the summary judgment stage. The Johnsons are equally adamant there was an agreement to proceed with trial upon stipulated facts.

In their written appellate brief, the Johnsons' attorney states:

"The undersigned specifically recalls this agreement because neither party had additional evidence to present to the trial court and the garnishment action would ultimately be tried to the court anyway. The hearing in the courtroom when this issue was addressed was either not on the record or has not been transcribed and provided to the [appellate court]."

This perceived error was brought to the district court's attention by Mid-Continent in its motion to amend or alter judgment. In their reply to the motion, the Johnsons specifically alleged: "[The district court], during oral argument, made clear that this was a

court 'trial'. Both parties agreed with that proposition." Mid-Continent, in its reply, held its ground, stating: "The record does not support the conclusion that the parties agreed to a trial based on stipulated facts." In denying Mid-Continent's motion, the district court was nonspecific in its ruling.

A party's waiver of its right to a full trial rather than a bench trial on stipulated facts should be explicit and unequivocal. See *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 142-43 (2nd Cir. 1998). However, we note that Mid-Continent, in spite of the Johnsons' allegations to the district court and the district court's denial of its motion for relief from judgment, intentionally chose not to include the transcript from the original hearing or the transcript, if any, from the oral argument on the motion for relief from judgment in the record on appeal.

"A party claiming error has the burden of furnishing a record showing the prejudicial error in the lower court. In the absence of such a record, an appellate court presumes that the action of the lower court was proper. *State v. Moncla*, 262 Kan. 58, 68, 936 P.2d 727 (1997)." *Sours v. Russell*, 25 Kan. App. 2d 620, 631, 967 P.2d 348 (1998), *rev. denied* 267 Kan. 887 (1999).

We have not been provided with the crucial transcript ostensibly supporting waiver and the district court's determination that a bench trial was to be conducted. Mid-Continent raised this issue as a point on appeal but has chosen not to include the transcripts necessary to provide this court with a complete record. Under these circumstances, we hold Mid-Continent has failed to demonstrate the district court erred in concluding the parties had submitted all issues for trial to the court on the stipulated facts.

## Policy Defenses

The comprehensive general liability insurance policy issued by Mid-Continent insuring Westhoff on June 14, 1992, contained the following conditions:

"**4. Insured's Duties in the Event of Occurrence, Claim or Suit:**

(a) In the event of an **occurrence**, written notice containing particulars sufficient to identify the **insured** and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the **insured** to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the **insured**, the **insured** shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The **insured** shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **insured** because of injury or damage with respect to which insurance is afforded under this policy; and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The **insured** shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

"**5. Action Against Company**: No action shall lie against [Mid-Continent] unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **insured's** obligation to pay shall have been finally determined either by judgment against the **insured** after actual trial or by written agreement of the **insured**, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter by entitled to recover under this policy to the extent of the insurance afforded by this policy."

Mid-Continent unsuccessfully argued to the district court that coverage was voided because of Westhoff's failure to give timely notice of the occurrence or cooperate with the company.

Our standard of review is de novo, as the district court's decision was based upon stipulated facts and construction of the insurance policy issued by Mid-Continent. See *McTaggart v. Liberty Mut. Ins.*, 267 Kan. 641, 645, 983 P.2d 853 (1999).

In denying Mid-Continent's policy defenses, the district court stated in its memorandum decision:

"Mid-Continent relies on policy defenses to avoid liability. A garnishment trial is a proper method to litigate policy defenses following the entry of judgment. *Watson v. Jones*, 227 Kan. 862, 610 P.2d 619 (1980). The carrier has the burden of proof to establish these policy defenses. *Baugher v. Hartford Fire Ins. Co.*, 214 Kan. 891, 900-01, 522 P.2d 401 [1974].

"The policy defenses relied upon Mid-Continent are: (1) breach of the duty to notify, and (2) breach of the duty to cooperate.

"The policy language relied upon by Mid-Continent is found on the 'conditions' page, paragraph 4 of the policy, Exhibit G.

"Subparagraph (a) provides as follows:

'In the event of an *occurrence*, written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.'

"Garnishee defendant Mid-Continent argues that no notice was ever given to it by Westhoff Sand Company and this is not disputed by the plaintiffs-garnishors. The first notice of any claim and of the lawsuit was provided to garnishee by telephone call from the plaintiffs' attorney November 3, 1994, and was followed up by a letter and a copy of the third amended petition November 4, 1994. It does not matter who gives the notice so long as notice is given and the insurer has actual notice thereby giving it an opportunity to make an investigation and defend the suit. *Jameson v. Farmers Mutual Automobile Ins. Co.*, 181 Kan. 120, 127, 309 P.2d 394 (1957).

"There are no facts and no evidence that Westhoff failed to give notice of the occurrence to Mid-Continent as soon as practicable in accordance with the policy requirements. The stipulated facts do not justify any conclusion or finding other than that the first Westhoff knew about the occurrence or the lawsuit was when Westhoff was served.

"It is not controverted that Westhoff never gave notice to Mid-Continent of the law suit either following service on [him] for Westhoff Brothers accomplished August 1, 1994, or following service of the third amended petition by certified mail on September 29, 1994.

"Failure to provide timely notice is not alone sufficient to excuse performance by the [insurer], Kansas also requires a showing of actual prejudice as a result of the untimely notice. Such prejudice is not presumed and the burden is on the insurer to show that the prejudice is substantial. *Creek v. Harder Constr.*, 25 Kan. App. 2d 232, 236-37, 961 P.2d 1240 (1998). *Creek* also makes it clear that an insurer must demonstrate prejudice in order to escape liability based upon its insured's failure to provide notice.

"Garnish[ee], Mid-Continent claims it was prejudiced both by losing the ability to raise the statute of limitations defense and by losing any chance of learning from Westhoff what other meritorious defenses it had. This prejudice in turn is predicated on the notion variously stated and repeated throughout the briefing as follows:

'Mid-Continent therefore could not participate in the scheduled mediation or defense of the underlying action without running the risk that it would be estopped from relying upon breach of the duty of cooperation later just as happened to the insurer in *Watson*. Mid-Continent's Memorandum in Support, page 9.'

"Notwithstanding the several variations of that argument made repeatedly, the Court finds and determines as a matter of law neither the argument nor the *Watson* case established such prejudice. As the defendant itself states on page 8 of its brief:

'The Kansas Supreme Court affirmed on the ground that the insured's failure to appear at trial did not constitute non-cooperation based upon the facts and circumstances of the case and did not rule upon the trial court's finding of estoppel.'

"In *Watson* the Kansas Supreme Court explicatively states on page 870 of Volume 227:

'We see no purpose in adding unnecessarily to the length of this opinion by discussing the presence or absence of estoppel since the appeal must be affirmed anyway for failure to establish the policy defense.'

"Just as the Court in *Boone v. Lowry*, 8 Kan. App. 2d 293, 299-300, 657 P.2d 64[, *rev. denied* 232 Kan. 875] (1983), stated:

'We know of no reason why, in Lowry's absence, if it could have been of any avail, MFA could not have made a unilateral reservation of rights, so far as Lowry was concerned, and defendant in his absence.'

"The Court concludes as a matter of law that there was no reasonable basis for Mid-Continent to not participate in the mediation or defense of the underlying action on the basis that it would risk estoppel from relying upon the breach of the duty of cooperation.

"Neither liability nor damages had been determined at the time Mid-Continent was advised that Westhoff was a party defendant. It is not as clear as Mid-Continent suggests that a statute of limitations defense could have been advanced; the Court had previously ruled that the filing of the third party petition would relate back. Under the decisions of the Kansas Supreme Court and Court of Appeals, Mid-Continent clearly had sufficient time to engage in the defense of Westhoff, to participate in the mediation, to file unilateral reservation of rights and proceed to investigate and work up the defense and make other appropriate decisions.

"The policy defense of lack of notice fails as a matter of fact and as a matter of law.

"The second policy defense is the duty of cooperation. The policy on the conditions page, paragraph 4(c) provides:

'The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, and in the conduct of suits . . . ; and the *insured* shall attend hearings and trial and assist in securing and giving evidence and obtaining the attendance of witnesses. . . .'

"The breach of a cooperation clause in a liability insurance policy does not by itself relieve an insurer of the responsibility. The breach must cause substantial prejudice to the insurer's ability to defend itself and the burden to establish this policy defense is on the insurer.

"It is undisputed that the company never requested the cooperation of Westhoff.

"The insurer Mid-Continent contends that it was excused from requesting the cooperation of the insured where the insured 'has hidden himself from the insurer' [c]iting *Boone v. Lowry*, [8 Kan. App. 2d at 298]. That indeed was the ruling, but it was of the trial court not the Court of Appeals. Mid-Continent asserts on page 6, of its reply memorandum:

'Since Westhoff had "hidden himself away" from Mid-Continent after that conversation, Mid-Continent cannot be required to show that he "refused to respond after he was contacted." '

"The Court finds that as a matter of fact and law that there is no evidence included among the stipulation of facts establishing that Westhoff had hidden himself away. Therefore, the argument that Mid-Continent cannot be required to show that he refused to respond is without merit.

"Further, both sides are in agreement that *Watson v. Jones, supra,* holds that an insurer raising a non-cooperation defense must show that it acted in good faith and attempted to secure the attendance and testimony of the insured at trial. The parties have stipulated that the following efforts were made by Mid-Continent to contact Westhoff following notice to Mid-Continent on November 3, and November 4, 1994;

(1) On November 18, 1994, Mid-Continent attempted to call Earl Westhoff at his home and there was no answer;

(2) Three days later on November 21, 1994, Mid-Continent again attempted to call Earl Westhoff but there was no answer.

(3) On November 21, 1994, Mid-Continent obtained Earl Westhoff's home address and telephone number which Mid-Continent already had.

(4) Also on November 21, 1994, Mid-Continent tried calling Westhoff at the telephone number provided for Westhoff Brothers and apparently Mid-Continent tried to call Earl Westhoff at home a second time that day.

(5) The following day November 22, 1994, Mid-Continent sent a certified letter to Westhoff at his work address and an identical letter to Westhoff at the residential address. No other efforts (except for the contact of former agents) were stipulated to and apparently none made.

"The Court finds and determines as a matter of fact and law that under the unique circumstances of this case those do not constitute a sufficient attempt to secure the attendance and testimony of an assured, and do not demonstrate that the failure to cooperate, appear or testify was due to the intentional refusal to cooperate despite timely and diligent effort by Mid-Continent.

"It is also urged by the defense on several occasions that the case of *Creek v. Harder Constr.*, 25 Kan. App. 2d 232, 961 P.2d 1240 (1998) a case from another division in this Court, is the closest on point and should be followed. The Court declines to do so and feels that there are significant differences factually and legally between the *Creek* case and the one presently under consideration. The most significant of these differences is that in the *Creek* case on May 31, 1991, the Creeks were granted a default judgment in the amount of $10,350.25; and on

August 5, 1991, counsel for Creek notified Maryland Casualty of the claims suit and judgment having first learned of Maryland Casualty during an August 1991 debtors exam. In the instant case plaintiffs notified Mid-Continent on November 3, and 4, prior to the mediation approximately one month later on December 8, and almost three months prior to the hearing at which time default judgment as to both liability and amount was awarded in favor of the plaintiffs and against Westhoff.

"Defendant has not met its burden of showing substantial prejudice from the lack of cooperation and has not adduced evidence demonstrating timely and diligent efforts to secure Westhoff's cooperation and therefore the breach of cooperation policy defense fails as a matter of law."

On appeal, Mid-Continent appears to be raising the following subtextual issues: (1) Notice of the occurrence was not given by or on behalf of Westhoff; (2) Westhoff knew immediately of the occurrence; (3) Mid-Continent did make good faith efforts to contact Westhoff and secure his cooperation; and (4) Mid-Continent was prejudiced as a result of Westhoff's failure to give timely notice or cooperate.

In *Jameson v. Farmers Mutual Automobile Ins. Co.*, 181 Kan. 120, 127, 309 P.2d 394 (1957), the court held it did not matter who gave notice to the defendant's insurance company; the issue was whether notice was given to the insurer, giving it an opportunity to make an investigation and defend the litigation.

The *Jameson* court also considered a failure of cooperation defense and held the defense is not available unless the insurer actually defends its insurer. In addition, the court held that an insurer must show substantial prejudice resulting from an inability to locate an insured before trial. 181 Kan. at 127.

Based upon the holdings in *Jameson*, we believe the pivotal issue is whether Mid-Continent carried its burden to prove prejudice as a result of the notice given by the Johnsons' attorneys more than 2 years after the occurrence. See *Creek v. Harder Constr.*, 25 Kan. App. 2d 232, Syl. ¶ 1, 961 P.2d 1240 (1998).

Mid-Continent relies upon our decision in *Creek* to support its claim of error. However, a careful reading of *Creek* leads us to conclude Mid-Continent's contention is without legal merit. In *Creek*, the district court specifically noted it was the insurance company's burden of proof to establish a defense based upon lack

of notice of claim, lack of notice of suit, and lack of cooperation. In the written stipulation of facts, Mid-Continent made no representation it had lost the opportunity to conduct an investigation of the loss, to appraise damages, or to determine responsibility for the accident and damages.

In finding Mid-Continent failed to show prejudice, the district court concluded:

"The Court concludes as a matter of law that there was no reasonable basis for Mid-Continent to not participate in the mediation or defense of the underlying action on the basis that it would risk estoppel from relying upon the breach of the duty of cooperation.

"Neither liability nor damages had been determined at the time Mid-Continent was advised that Westhoff was a party defendant."

We adopt the rationale and findings of the district court in its memorandum decision, finding Mid-Continent has failed to show prejudice as a result of the notice given. We also hold the failure to cooperate defense was not available because Mid-Continent chose not to enter a defense on behalf of its insured.

Even if a defense of failure to cooperate would be applicable, in spite of Mid-Continent's failure to investigate or enter any defense whatsoever, we also agree with the findings of the district court supporting the conclusion that Mid-Continent failed to prove Westhoff concealed himself. A contrary conclusion was not supported by the stipulation of facts provided to the district court.

Finally, Mid-Continent takes issue with the district court's finding that it did not exercise good faith in its attempt to secure the attendance and testimony of Westhoff at trial. Once again, we obviously have difficulty with this point as Mid-Continent did not provide any defense to its insured. In any event, we are not inclined to depart from the district court's conclusion that Mid-Continent's efforts were limited and superficial under the circumstances presented.

## Award of Attorney Fees

Mid-Continent contends that the Johnsons are not entitled to attorney fees because its failure to defend was not without just cause and excuse. K.S.A. 40-256 provides:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40-201, and including in addition thereto any fraternal benefit society and any reciprocal or interinsurance exchange on any policy or certificate of any type or kind of insurance, if it appear from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs."

Whether an insurance company's refusal to pay is without just cause or excuse is determined on the facts and circumstances in each case. *Smith v. Blackwell*, 14 Kan. App. 2d 158, 165, 791 P.2d 1343 (1989), *rev. denied* 246 Kan. 769 (1990). In refusing to pay a claim, an insurance company has a duty to make a good faith investigation of the facts surrounding the claim. *Brown v. Combined Ins. Co. of America*, 226 Kan. 223, 227, 597 P.2d 1080 (1979). If there is a bona fide and reasonable factual ground for contesting an insured's claim, there is no failure to pay without just cause or excuse. *Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. 561, 565-66, 470 P.2d 756 (1970).

We adopt the findings of the district court supporting an award of attorney fees. In our opinion, the district court was correct that Mid-Continent's reliance upon *Watson* was misplaced and does not support its failure to investigate, defend, or appear. Certainly, Mid-Continent could have done so with a reservation of rights notification to Westhoff. We are not inclined to disturb the district court's ruling. The more substantial issue concerns the amount of attorney fees that were allowed by the court.

Mid-Continent contends the district court erred in awarding the Johnsons $1,202,336.65 in attorney fees. In its findings, the district court stated it had previously determined in the underlying tort litigation that "an award of attorney's fees in the amount of 33-⅓% was appropriate given the totality of the services provided and the Court makes that determination with respect to this garnishment action against Mid-Continent and will award attorney's fees in that amount."

"The reasonableness of attorney fees rests within the sound discretion of the trial court, and it can draw on its own knowledge and expertise in determining a

reasonable amount. On appeal, the trial court's award will not be disturbed absent a showing of abuse of discretion. If this court determines that the district court abused its discretion, it may fix such fees as it determines are reasonable. [Citation omitted.]" *Moore v. St. Paul Mercury Ins. Co.*, 26 Kan. App. 506, 507, 989 P.2d 294 (1999), *rev'd on other grounds* 269 Kan. 272, 3 P.3d 81 (2000).

Our Supreme Court has rather consistently instructed as to factors to be considered in an award of attorney fees. In *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 713, 366 P.2d 219 (1961), the court noted:

"The statute (40-256, *supra*) provides for the allowance of a *reasonable sum* as an attorney fee to be recovered and collected as a part of the costs. It does not contemplate an amount in the nature of a speculative or contingent fee conditioned on winning the case, but only a reasonable fee for the appellee to pay his attorney for prosecuting the case . . . ."

In *City of Wichita v. Chapman*, 214 Kan. 575, Syl. ¶ 7, 521 P.2d 589 (1974), the Supreme Court held:

"The circumstances to be considered in determining the amount of a reasonable attorney fee are the amount and character of the services rendered; the labor, time and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibility imposed; the amount of money or the value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the performance of the services; the professional character and standing of the attorney and the results secured."

Finally, our Supreme Court has provided standards to be considered in Kansas Rules of Professional Conduct 1.5 (fees) (2002 Kan. Ct. R. Annot. 352).

We conclude the district court abused its discretion in the amount of attorney fees awarded because there was no hearing upon the issue or discrete findings that the court considered any factor other than the percentage recoverable under the contingent fee agreement. We further conclude under the circumstances of this litigation—a default judgment in the underlying tort action followed by the garnishment action submitted on stipulated facts—that we are unable to assess reasonable attorney fees. The record on appeal is simply not sufficient. We must vacate the award of attorney fees and remand this issue to the district court for further consideration consistent with this opinion.

## The Allowance of Damages in Excess of Policy Limits

*Standing*

Mid-Continent contends that because the Johnsons did not obtain a written assignment of rights from Westhoff they lack standing to assert a damage claim in excess of the $1 million policy limit. This issue was not raised before the district court. We hold that because this issue was not raised in a timely manner before the trial court, Mid-Continent cannot raise the issue for the first time on appeal. See *King v. White*, 265 Kan. 627, 640, 962 P.2d 475 (1998).

Alternatively, Kansas law is settled that in a garnishment action, a garnishor is a third-party beneficiary of the underlying contract of insurance entitled to assert a claim arising from a breach of the insurance company's duty to exercise reasonable care and good faith in efforts to settle a claim against its insured. See *Gilley v. Farmer*, 207 Kan. 536, 543-44, 485 P.2d 1284 (1971); *Farmco, Inc. v. Explosive Specialists, Inc.*, 9 Kan. App. 2d 507, 515, 684 P.2d 436 (1984).

*Causation*

Mid-Continent argues it is not liable for any judgment in excess of policy limits, first contending the excess judgment was not caused by its failure to defend Westhoff. Mid-Continent correctly notes an insurer who wrongfully refuses to defend an action against its insured is not liable for the amount of a judgment in excess of policy limits, absent a showing by the insured that the excess judgment is traceable to the refusal to defend. See *George R. Winchell, Inc. v. Norris*, 6 Kan. App. 2d 725, Syl. ¶ 3, 633 P.2d 1174, *rev. denied* 230 Kan. 817 (1981).

Mid-Continent strenuously contends there has been no showing of causation that would permit the grant of an excess judgment. In particular, it is argued (1) the default judgment was not shown to be the result of any action taken by Mid-Continent and (2) the Johnsons presented no credible proof the default judgment would have been lower had the lawsuit been properly defended.

We do not accept Mid-Continent's arguments, adopting instead the findings and conclusions of the district court. Mid-Continent

had the opportunity but failed to participate in settlement efforts notwithstanding an awareness Westhoff was not employing an attorney or presenting a defense. Under such circumstances, the excess judgment is traceable to Mid-Continent's refusal to investigate and defend its insured.

In summary, we affirm the district court on all of the issues raised on appeal except for the amount of attorney fees to be awarded under K.S.A. 40-256. We vacate the judgment as to the amount of attorney fees and remand to the district court for further hearing consistent with this opinion.

Affirmed in part, vacated in part, and remanded with directions.